SARAH PRIDDY *et al.*

*v.*

AMANDA GRIFFITH *et al.*

*Filed at Mt. Vernon June 19, 1894.*

1. DOWER—*coal mines—waste.* It is a well established rule of law, that a person occupying land as dower can not commit waste upon such land, and that the opening of coal or other mines thereon amounts to waste , but it is equally well settled in this State, that when mines are already opened upon land assigned as dower, the widow has the right to operate the same and receive the proceeds thereof.

2. A widow may be endowed of mines opened by the heir or owner of the fee after her dower attaches, and before there has been any assignment. It is not waste for her to work mines opened, although the same have been abandoned before the death of her husband. She may construct new approaches and not be guilty of waste.

3. SAME—*in leased lands — contract for opening mines—rents and royalties.* Where there is a valid, subsisting contract, executed by the

husband in his lifetime, under which the lessees may open the mines, and by the terms of which one dollar per acre rent or royalty is to be paid annually to the lessor, his heirs or other legal representatives who, at the time, shall be legally entitled to the life estate in or fee simple title to the land until the mines are opened, and certain fixed royalties after the mines are opened and worked, the widow of the lessor will be entitled to the rent or royalty upon lands assigned as dower, after the assignment of her dower.

4. Should the lessees open mines upon lands assigned as dower, without the consent of the widow, she will be entitled to the royalty named in the lease. In such case, the act of opening the mine would be practically the act of the husband, viz., authorized by him.

5. A lease of coal lands for mining purposes, after fixing the royalty to be paid for coal raised, provided that until actual mining operations were commenced, the lessee, or its successor or assigns, should, on the first day of January, pay the lessor, or those succeeding to his rights, one dollar for each acre of the tract leased out of which no coal at that time should be raised : *Held,* that the widow of the lessor was entitled to the one dollar per acre after the assignment of her dower, until the opening of the mines, if any were opened on her lands, after which she should receive the royalties mentioned in the lease, and that the one dollar per acre was to be treated as the annual rental for lands, and not mines.

WRIT OF ERROR to the Circuit Court of Williamson county ; the Hon. A. K. VICKERS, Judge, presiding.

This writ of error brings in review the action of the Williamson county circuit court, at the February term, 1892, in deciding that the annual rental per acre, or compensation, being paid by the lessees of coal and other mining privileges in land under a lease made during the lifetime of the ancestor and husband, should not be paid to the widow as to the portion of land allotted to her as homestead and dower, but that during the continuance of the widow's life estate in the portion covered by her homestead and dower, the royalty or rental should be paid to the heirs or their assigns.

In March, 1871, Tinsley Priddy (the deceased ancestor and husband) and his wife, the present widow, Sarah Priddy, leased all coal, minerals, and rights of opening and operating mines in the lands hereinafter mentioned, to A. Connor, An-

36—150 ILL.

drew C. Bryden and Frank J. Chapman. These mining rights, by assignment, came afterward to be owned by the Carbondale Coal and Coke Company, a corporation, and on the 8th of March, 1873, the assignee and lessors or grantors made a new contract, which took the place of the one of March, 1871, and covered the same lands, and which are described as follows: The north-west quarter of the south-west quarter, the south-west quarter of the south-west quarter, the south-west quarter of the north-west quarter, and the west half of the south-east quarter of the south-west quarter of section 34, township 8, south, range 1, east of the third principal meridian, in Williamson county, Illinois. The lease conferred all mining rights, etc., in the broadest terms, upon the grantees, and provided for the compensation to be paid after mining began, at five cents per ton, etc. But such provisions are unimportant, as, so far, mining operations have never been begun, but the compensation provided for, till mining began, was covered by the following language in the last contract: "And until actual mining operations are commenced, as is specified in the aforesaid recorded instrument, the said party of the second part, its successors or assigns, shall pay on the first day of January, to said party of the first part, their heirs or other legal representatives who, at the time, shall be legally entitled to the life estate or the fee simple ownership of the land, the sum of one dollar for each acre of the tract or surveyed subdivision out of which no coal shall at that time have been mined and removed, and all payments of rent so made shall be credited and allowed as an advance payment of the royalty of five cents per ton of two thousand pounds, reserved as aforesaid, and shall be deducted, without interest, in installments, not exceeding at one time, when deducted, one-half of the whole sum due in the monthly payment for the royalty from which said installment is deducted."

Tinsley Priddy died in April, 1885, residing on this land with his family as a home. The property right in this coal

and mining lease, with the other assets of the Carbondale Coal and Coke Company, afterwards, by the action of the United States Circuit Court, was placed in charge of a receiver at the suit of certain creditors, and owing to some embarrassment of the receiver, the annual royalty of a dollar per acre was not paid the first of each January, under the foregoing grant or lease, and the widow and heirs of Tinsley Priddy filed a bill to cancel said lease, under the right of forfeiture upon the failure of such payments. The result of this litigation was, that the United States Circuit Court refused to permit the forfeiture on account of the receiver's inability to meet the annual payments, but ordered the payment by the receiver of all arrearages, etc. In this way there has accumulated a fund of $1022 of rents or royalties that have accrued under the lease.

The plaintiffs in error, on the first of September, 1891, filed their bill in this case in the Williamson county circuit court, to the September term, 1891, seeking the assignment of dower and homestead to the widow, and the partition of the remainder of said land among the heirs or their assigns, and for the distribution of the mining royalty accumulated, and a declaration of the rights of the parties as to the future accumulations of royalty arising out of the land under the terms of the mining contract. On the first day of January, 1892, the Carterville Coal Company, which has become the owner of the mining lease, paid into the hands of the clerk of the circuit court the $140 stipulated royalty which fell due then for the year 1892. The only parties to the suit are the widow, Sarah Priddy, and the heirs of Tinsley Priddy, deceased, and their husbands and wives, and the Carterville Coal Company, William W. Barr, and J. J. Griffith, who, in addition to being the husband of one of the daughters, had bought out the shares of three of the heirs, after, however, the accumulation of some of the royalty, which still requires that they be parties, as to that feature.

At the September term, 1891, the circuit court found and declared the rights of the parties in the land, and appointed commissioners to assign the dower and homestead of the widow, and partition the remainder to the heirs or their assigns. The commissioners reported at the same term, showing an assignment to the widow of twenty-five acres, being off the north end of the south-west quarter of the south-west quarter of section 34, township 8, south, range 1, east of the third principal meridian, as her homestead, and forty-two acres, being seven acres off the south end of the north-west quarter of the south-west quarter, and fifteen acres off the south part of the south-west quarter of the south-west quarter, and the west half of the south-east quarter of the south-west quarter of section 34, township 8, south, range 1, east of the third principal meridian, as dower out of the remainder, and the remainder not embraced in the dower and homestead was finally sold, not being susceptible of partition, etc. But no complaint is made as to any action relating to the sale, but the question concerning the disposition of the royalty accumulated, and thereafter to accumulate, under the mining lease, was postponed from the September term, 1891, to the February term, 1892, and at the February term, 1892, the court made and declared its findings upon the royalty question, finding that the royalty for the year 1885, due when Priddy died, should be treated as personalty, and it is disposed of in a manner that is satisfactory to all parties, both plaintiffs and defendants in error; but as to the royalties or rents for the years following 1885, the court decreed that the widow had no rights therein, and likewise that the future royalties on the whole lands, including that assigned as dower and homestead, should be the property of the heirs or other assigns, and the widow was entitled to no portion of such royalty. To this action of the court relating to the rent or royalty, the widow, Sarah Priddy, and others, prosecute this writ of error.

Messrs. CLEMENS & WARDER, for the plaintiffs in error:

The widow was dowable of the mines opened and worked by her husband. 4 Kent's Com. 41; 1 id. 210; 5 Am. and Eng. Ency. of Law, 890; 3 Waite's Actions and Defenses, 75, 657.

When the mine is opened for the first time by the heir after the death of the ancestor, the widow will be entitled to royalty in the land set off to her. *Lenfers* v. *Henke,* 73 Ill. 405.

After demand by the widow for assignment, or after. the bringing by her of suit for assignment, which, in law, is a demand, she is entitled to damages from the date of such demand, which damages are one-third of the rentals of the whole body of the land. *Bonner* v. *Peterson,* 44 Ill. 253; *Schnebley* v. *Schnebley,* 26 id. 116; *Atkin* v. *Merrill,* 39 id. 62; *Stowe* v. *Steele,* 45 id. 328; *Lennahan* v. *O'Keefe,* 107 id. 620; *Peyton* v. *Jeffries,* 50 id. 143; *Strawn* v. *Strawn,* id. 256; *Cool* v. *Jackson,* 13 Ill. App. 560; *Walker* v. *Walker,* 5 id. 289.

Mr. V. A. SCHWARTZ, for the defendants in error:

Before assignment a widow's right of dower is inchoate, and she will not be entitled to the rents and profits. *York* v. *York,* 38 Ill. 526; *Strawn* v. *Strawn,* 50 id. 256; *Reynolds* v. *McCurry,* 100 id. 356; *Green* v. *Massie,* 13 id. 364; *Gartside* v. *Outley,* 58 id. 212.

It is waste for the dowress to open and operate a mine before the assignment of her dower. 4 Kent's Com. 41; *Merritt* v. *Merritt,* 97 Ill. 249.

The partition act respects the separate estates of the widow and heirs in the homestead premises. *Jones* v. *Gilbert,* 135 Ill. 34.

Mr. JUSTICE BAKER delivered the opinion of the Court:

There is no objection urged against the decree assigning dower or partition of the land. The only question presented to this court by the record is, did the circuit court err in hold-

ing that the widow was not entitled to the rents or royalties due and to become due by the terms of the foregoing lease from the coal company.

It is a well established rule of law, that a person occupying land as dower can not commit waste upon such land, and that the opening of coal or other mines thereon amounts to waste. But it is equally well settled in this State, that where mines are already opened upon land assigned as dower, the widow has the right to operate the same and receive the proceeds thereof. (*Lenfers et al.* v. *Henke et al.* 73 Ill. 405, and cases there cited.) It is true, in this case the mines have not been actually opened upon the lands assigned as dower, but there being a valid subsisting contract, executed by the husband in his lifetime, under which the lessees may, at any time, open the mines, and by the terms of which one dollar per acre rent or royalty is to be paid annually to the lessor, his heirs or other legal representatives who, at the time, shall be legally entitled to the life estate in or fee simple title to the land, until the mines are opened, and certain fixed royalties after the mines are opened and worked, it seems clear to us, that in justice the widow is entitled to that rent or royalty after the assignment of her dower. Should the lessees open mines on the lands assigned as dower, as by the terms of the lease they may, without the consent of the widow, she certainly would, upon the principle announced in the above cited case, be entitled to the royalty named in the lease. The act of opening the mine would, in such case, be practically the act of the husband, viz., authorized by him. Then, in contemplation of law, for the purposes of this case the mine may be treated as already opened when the widow's right of dower attached.

In the case of *Lenfers et al.* v. *Henke et al. supra,* the question was, had the widow the right to the mineral rents and profits of mines opened by the owner of the fee after the right of dower had attached. This court said: "On principle, why may she not be endowed of mines opened by the heir or owner

of the fee, after dower attaches and before there has been any assignment? By all the decisions it is not waste for her to work mines opened, although the same had been abandoned before the death of her husband. She may construct new approaches and not be guilty of waste. On the same principle, if the cases on this question can be said to rest upon any principle, she could work mines opened by the heir without being guilty of waste, * * * there is no reason why the wife may not be entitled to be endowed of mines opened by the heir or owner of the fee after the right of dower attaches and before there has been any assignment, as well as in mines opened by the husband."

We think, upon the reasoning of said case, appellant is entitled to the one dollar per acre after the assignment of her dower and until the opening of mines, if any are opened, on her land, after which she should receive the royalty mentioned in the lease. It is also clear from the terms of the lease under which the fund in question accrued, that the one dollar per acre rent, to be paid until the mines should be opened, is to be treated as the annual rental for lands, and not mines, and if so treated, appellant is clearly entitled to the rent arising from the land set off to her by the assignment of her dower.

The bill in this case seeks the distribution of funds accruing before and after the assignment of dower. As to that part accruing before the assignment, no right exists in the widow, but for the reasons stated she should receive all that has accrued or will accrue, during the continuance of her life estate, from the lands set off to her by the assignment of her dower and homestead.

The decree of the circuit court will be reversed, and the cause will be remanded to that court, with directions to enter a decree in conformity with the views here expressed.

*Decree reversed.*